# Eligibility of a Retired Army Officer to Be Appointed Inspector General of the Department of Defense

A retired officer of the Regular Army, not on active duty, is not a "member of the Armed Forces, active or reserve," under section 8 of the Inspector General Act of 1978 and therefore is not disqualified from being appointed as Inspector General of the Department of Defense.

May 18, 2007

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF DEFENSE

Section 8 of the Inspector General Act of 1978 ("IG Act") provides that "[n]o member of the Armed Forces, active or reserve, shall be appointed Inspector General of the Department of Defense." 5 U.S.C. app., IG Act § 8(a) (2006). You have asked whether a retired officer of the Regular Army, not on active duty, is a "member of the Armed Forces, active or reserve" under this provision and thus is disqualified from being appointed as Inspector General ("IG") of the Department of Defense. We conclude that this exclusion does not apply to such a person, because he is neither an "active" nor a "reserve" member of the Armed Forces within the meaning of section 8.

Neither the IG Act nor title 10 of the United States Code clearly defines the phrase "member of the Armed Forces" in the context of section 8 of the IG Act, but it is clear that mere retirement does not remove an officer from membership in the Armed Forces. Section 3075 of title 10 describes "the retired officers . . . of the Regular Army" as part of the "Regular Army." 10 U.S.C. § 3075(b)(3) (2006). And section 688 lists among the "members of the armed forces" who "may be ordered to active duty" a "retired member of the Regular Army, Regular Navy, Regular Air Force, or Regular Marine Corps." *Id.* § 688(a), (b)(1). That is, officers who retire from active duty in the Army remain part of the Regular Army, and members of the Regular Army are "members of the armed forces." Other statutes similarly refer to a "retired member of the Armed Forces." *See, e.g.*, 5 U.S.C. § 2108(5) (2006); *id.* § 3326; *see generally* Memorandum for George P. Williams, Associate Counsel to the President, from Robert G. Dixon, Jr., Assistant Attorney General, Office of Legal Counsel, *Re: Appointment of Retired Reserve Officers to the National Selective Service Appeal Board* at 2 (July 25, 1974) (concluding that "a retired member of a reserve component of the armed forces" is a member of the Armed Forces). Your office shares the view, based in part on common usage in the military establishment, that an officer who merely retires from the Regular Army remains a "member of the Armed Forces." Thus, if section 8 of the IG Act simply barred appointment of a "member of the Armed Forces," without the additional phrase "active or reserve," it likely would bar appointment of a retired Regular Army officer. The use of the additional phrase "active or reserve" therefore

suggests some sort of limitation; otherwise it would not clearly add any meaning to the statute.

The reference in section 8's additional phrase to "reserve" members is not directly relevant here. We understand that the prospective nominee is retired from the Regular Army rather than the Army Reserve. The reserve consists of three categories, and the prospective nominee is not in any of them. *See* 10 U.S.C. § 10141(a) (2006) (providing that "[e]ach Reserve shall be placed in one of [the following] categories"—"a Ready Reserve, a Standby Reserve, and a Retired Reserve"); *id.* § 10154 (defining "Retired Reserve" to include "Reserves who are or have been retired under" various sections of the U.S. Code and "Reserves who have been transferred to the Retired Reserve"). He thus is not a "reserve" "member of the Armed Forces." The applicability of section 8's prohibition therefore turns on whether he remains an "active" "member of the Armed Forces."

Neither section 8 nor title 10 defines the term "active" in the military context. It does not appear to be a term of art; rather, it has two plausible meanings in this context, both of which make it equivalent to more precise terms. "Active" can be shorthand for "active duty," which title 10 defines as "full-time duty in the active military service of the United States." *Id.* § 101(d)(1). "Active" also may, you have explained, be used to mean "regular," in contrast to "reserve," *see generally id.* § 101(b)(12) ("The term 'regular,' with respect to an enlistment, appointment, grade, or office, means enlistment, appointment, grade, or office in a regular component of an armed force."), although this latter usage is colloquial and considered imprecise in the Department of Defense. If the former meaning applied in section 8, then that section's prohibition would extend only to active-duty and reserve members. A retired regular officer of the Army not on active duty is neither. If, however, the term "active" were understood to mean "regular" in section 8, then a retired officer of the Army would be subject to the prohibition, because, as explained, he remains a member of a regular component of the Armed Forces—the Regular Army.

Although the answer is not beyond dispute, the evidence is stronger in favor of the former meaning of "active." This reading finds support in the 1982 act that added section 8 to the IG Act, in much of the relevant usage in title 10; in the general approach of Congress to appointments of retired and reserve offices to non-military positions in the Department of Defense, and in the traditional and constitutionally-based presumption that the President has broad discretion in selecting persons for appointment as federal officers.

First, Public Law 97-252, which added section 8 to the IG Act as part of a broader statute concerning the military, repeatedly uses the word "active" as part of the phrase "active duty." Department of Defense Authorization Act, 1983, Pub. L. No. 97-252, §§ 401, 402(b), 501(b), 502, 1116, 96 Stat. 718, 725–26, 750 (1982). Only twice does the statute use the term "active" by itself—the first in adding the provision at issue, *id.* § 1117(b), 96 Stat. at 751, and the second in

"find[ing] that . . . the National Guard and Reserve Forces of the United States are an integral part of the total force policy of the United States for national defense and need to be ready to respond, on short notice, to *augment the active military forces* in time of national emergency," *id.* § 1130(a)(1), 96 Stat. at 759 (emphasis added). The latter usage might suggest that the term means "regular" forces, as contrasted to "the National Guard and Reserve Forces," but seems better read as referring more narrowly to those forces that are on active duty and thus presently "ready to respond" should an emergency arise. Retired officers, even if they too might be called upon in time of national emergency by being "ordered to active duty," 10 U.S.C. § 688(a), (b)(1); *see also id.* § 973(b)(1)(B) (referring to retired regular officer being called to active duty), presumably would not be presently ready to respond in such a situation. The usage in section 1130 of the 1982 act thus, although not conclusively, suggests that Congress used "active" as shorthand for "active duty." It is reasonable to apply the same sense to the other use of the same term in the 1982 statute.[1]

Second, uses of the phrase "active and reserve" and the term "active service" in title 10 indicate, on the whole, that "active" more commonly has the sense of "active duty." As to the phrase "active and reserve," which is the most relevant to the usage in section 8 of the IG Act, section 167 of title 10, for example, speaks of the "active and reserve special operations forces of the armed forces stationed in the United States" and says that they should be "assigned to the special operations command." 10 U.S.C. § 167(b) (2006). And section 487 requires that certain reports include a description "identify[ing] the active and reserve component units of the armed forces participating at the battalion, squadron, or an equivalent level (or a higher level) in contingency operations, major training events, and other exercises and contingencies of such a scale that the exercises and contingencies receive an official designation." *Id.* § 487(b)(4). The references to "special operations forces" being "stationed" and "assigned" to a command, and to units "participating" in various "operations," suggest that the "active" forces and component units being discussed are those on "active duty." Similarly, in the term "active service" in title 10, "active" has the sense of "active duty" rather than referring to anyone who is a member of the regular Armed Forces. Section 1175,

---

[1] The legislative history is largely inconclusive. The House Conference Report accompanying the final bill simply echoes the bill's terms: "Both the House and Senate provisions would prohibit the appointment of a member of the Armed Forces, active or reserve, as Inspector General of the Department of Defense." H.R. Conf. Rep. No. 97-749, at 176, *reprinted in* 1982 U.S.C.C.A.N. 1569, 1581. The sponsor of the legislation in the Senate, Senator Roth, stated that his "amendment would provide for a *civilian* Inspector General in the Defense Department and *would not permit any military personnel* to assume the Inspector General position." 128 Cong. Rec. 9678 (May 12, 1982) (emphasis added). As we explain below, a retired Regular Army officer commonly would be understood as "civilian" for purposes of appointment in the Department of Defense. But it is not clear in what sense Senator Roth was using the phrase "any military personnel."

for example, provides that a "member entitled to voluntary separation incentive payments who is also entitled to basic pay for active or reserve service, or compensation for inactive duty training, may elect to have a reduction in the voluntary separation incentive payable for the same period in an amount not to exceed the amount of the basic pay or compensation received for that period." *Id.* § 1175(e)(2). The references to basic pay and separation, as well as the contrast between "active . . . service" and "inactive duty training," suggest that "active" was intended to mean the equivalent of "active duty." And section 942 speaks of "a person retired from the armed forces after 20 or more years of active service," indicating that retirement and "active service" are distinct. *Id.* § 942(b)(4).

Some provisions in title 10 are more ambiguous, particularly those referring to "active and reserve components" of the various Armed Forces. Usage of "active" in this phrase is the one where "active" might most readily be an equivalent of the more precise term "regular" discussed above: But even in this context, usage often suggests a sense of "active duty," or at least that, even if the phrase "active component" technically includes persons retired from a regular component (because they remain members of the Armed Forces and are not in a reserve component), its focus is on the active-duty members of that component. Section 118, for example, refers to the "discharge" of particular "missions," *id.* § 118(d)(16) (requiring that a report submitted by the Secretary of Defense include "[t]he homeland defense and support to civil authority missions of the active and reserve components, including the organization and capabilities required for the active and reserve components to discharge each such mission"); section 153 refers to the ability of active and reserve components to "execute" a military strategy, *id.* § 153(d)(2)(G) (requiring an "[a]ssessment of the capabilities and adequacy of United States forces (including both active and reserve components) to successfully execute the national military strategy"), and to "the readiness" of those components, *id.* § 153(d)(3)(B) (providing that "the Chairman should make assumptions pertaining to the readiness of United States forces (in both the active and reserve components)"); and section 2815 refers to the "joint use" of a construction project by active and reserve components, *id.* § 2815(a) (defining "joint use military construction project" to mean a construction project intended to be used by "both the active and a reserve component of a single armed force" or "two or more components (whether active or reserve components) of the armed forces"). On balance, then, the weight of the statutory evidence of usage seems to be that Congress has used "active" in the context of the Armed Forces either ambiguously or as the equivalent of "active duty," and that, as "active" is used in section 8 of the IG Act, the better reading is that it is equivalent to "active duty."

Third, other provisions governing the appointment of persons to non-military offices within the Department of Defense typically permit the appointment of both retired and reserve officers of the Armed Forces, establishing a background rule for positions requiring presidential appointment and Senate confirmation that "active duty" officers are the only ones excluded. Congress reasonably can be

taken to have legislated in light of this background rule. And reading the ambigu-ous reference to "active" in section 8 of the IG Act as meaning "active duty" conforms the prohibition to this background rule as far as the text allows.

Numerous sections in title 10 require that presidentially appointed, Senate-confirmed officers in the Department be "appointed from civilian life." *See, e.g.*, 10 U.S.C. §§ 113(a) (2006) (Secretary), 132(a) (Deputy Secretary), 133(a) (Under Secretary for Acquisition, Technology, and Logistics), 134(a) (Under Secretary for Policy), 135(a) (Under Secretary (Comptroller)), 136(a) (Under Secretary for Personnel and Readiness), 137(a) (Under Secretary for Intelligence), 138(a) (Assistant Secretaries), 140(a) (General Counsel), 3013(a) (Secretary of the Army), 5013(a) (Secretary of the Navy), 8013(a) (Secretary of the Air Force). Your office has informed us that the Department of Defense long has understood that language to permit the appointment of retired and reserve officers not on active duty. This understanding is supported by, and may well be based on, a 1961 memorandum of this office for your department, in which we concluded that a retired regular officer is not automatically disqualified from appointment to such positions, and that whether he is "in civilian life" depends on whether he has in fact "ceased to engage in military service and ha[s] entered civil life and civil pursuits." Memorandum for Cyrus R. Vance, General Counsel, Department of Defense, from Harold F. Reis, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Eligibility of a Retired Regular Officer of the Armed Forces to be Appointed to the Position of Under Secretary or Assistant Secretary of One of the Military Departments* at 3 (Feb. 3, 1961) (internal quotation marks omitted). We added that, when Congress does seek categorically to exclude retired regular officers from appointment to an office, it does so "in unmistakable language," *id*., and "expressly," *id*. at 4.

This background rule is not unqualified, but typically there is only a brief wait-ing period immediately following retirement, or an exception for reserve or retired officers called to extended active duty. Thus, consistent with this agency under-standing, 5 U.S.C. § 3326(b) provides that a "retired member of the armed forces may be appointed to a position in the civil service in or under the Department of Defense . . . during the period of 180 days immediately after his retirement" only under specific circumstances, including a "state of national emergency." Section 973 of title 10 similarly prohibits an "active duty" officer from "hold[ing] . . . or exercis[ing] the functions of" a presidentially appointed and Senate-confirmed "civil office in the Government of the United States," 10 U.S.C. § 973(b)(2)(A) (2006), and includes within the prohibition a retired or reserve officer who is "under a call or order to active duty for a period in excess of 270 days," *id.* § 973(b)(1)(B) & (C).

Taken together, these provisions indicate that Congress has broadly allowed retired as well as reserve members of the Armed Forces to hold Senate-confirmed civilian positions in the Department of Defense, and in particular that both retired

and reserve members of the Armed Forces are in "civilian life" so long as they are not called to active duty. The IG for the Defense Department also holds a Senate-confirmed position. It is appropriate to read the prohibition in section 8 of the IG Act to be as consistent with this background rule as the text allows. To the extent that section 8 unambiguously applies to "reserve" members of the Armed Forces, it clearly overrides the background rule; but given the ambiguity of the use of "active" in section 8, it is appropriate to read that term as consistent with the background rule, excluding "active duty" members but not members retired from active duty. (We need not here consider the application of section 8 or of 10 U.S.C. § 973 if a retired member serving as IG were called to active duty.)

Reading section 8 in light of this background rule also answers any conflict of interest concerns that one might see in the appointment of a retired member of the Armed Forces to be IG for the Defense Department. For example, an IG who is retired from the Regular Army may have occasion to audit the Army's retirement program or, in the course of an audit, recommendation, or other analysis, to apply aspects of the Uniform Code of Military Justice. But the same sorts of issues could arise if such a person filled one of the myriad senior positions cited above, yet Congress has not deemed such attenuated potential "conflicts" to be disqualifying. Thus, such concerns provide no ground for us to question our interpretation.

Finally, the term "active" as used in section 8 of the IG Act should, to the extent it is ambiguous, be read narrowly to protect the President's discretion under the Constitution's Appointments Clause in selecting "Officers of the United States." Congress may, as an incident of establishing an office, prescribe "reasonable and relevant qualifications and rules of eligibility of appointees." *Myers v. United States*, 272 U.S. 52, 129 (1926). The Attorney General has held this same view since well before the Court decided *Myers. See Civil-Service Commission,* 13 Op. Att'y Gen. 516, 520–21 (1871). But the discretion in selecting and appointing the best person to fill the office is the President's alone. *See The Federalist* No. 76, at 512 (Alexander Hamilton) (Jacob E. Cooke ed., 1961) ("In the act of nomination his judgment alone would be exercised; and as it would be his sole duty to point out the man, who with the approbation of the Senate should fill an office, his responsibility would be as complete as if he were to make the final appointment."). As a result, qualifications imposed by Congress may "not so limit selection and so trench upon executive choice as to be in effect legislative designation," *Myers*, 272 U.S. at 128, and Congress's "right to prescribe qualifications is limited by the necessity of leaving scope for the judgment and will" of the appointing authority, *Civil-Service Commission*, 13 Op. Att'y Gen. at 520. Thus, "[c]ongressional attempts to limit the class of persons from whom the President may appoint the highest officers of the government . . . raise serious constitutional concerns." *Application of 28 U.S.C. § 458 to Presidential Appointments of Federal Judges,* 19 Op. O.L.C. 350, 357 (1995); *see FEC v. NRA Political Victory Fund,* 6 F.3d 821, 824 (D.C. Cir. 1993) ("Congressional limitations—even the placement of burdens—on the President's appointment power may raise serious constitutional

questions. . . . Presidents have often viewed restrictions on their appointment power not to be legally binding."). In this case, to read "active" as equivalent to "regular" would exclude from the President's consideration for appointment all retired regular military personnel—in addition to all of the active duty and reserve members, whom section 8 plainly excludes. To expand the exclusion according to such a reading would presumably bar a large additional number of persons from consideration, and Congress has not clearly indicated why it is relevant to faithfully performing the duties of Defense Department IG that one be entirely divorced from the regular Armed Forces. Indeed, that group may well contain some of the candidates whose experience and special competence best qualify them to perform those duties. By resolving the ambiguity in section 8 in favor of reading the word "active" to mean "active duty" rather than "regular," we avoid unnecessarily constricting the President's discretion in appointing the candidate he determines to be best for the job.

Our analysis does lead to one interpretive oddity: A retired regular officer could be appointed as IG (so long as he had not been called to active duty), but a retired *reserve* officer could not (because he would still be a "reserve" member of the Armed Forces, *see* 10 U.S.C. §§ 10141 & 10154 (2006)). If Congress's desire was to bar from the position of IG persons who had "too much" connection to the military, this result may seem counterintuitive, as one assumes that a person retired from a regular rather than reserve component would have the greater connection. This result is a consequence of the fact that "reserve" has a clear statutory meaning whereas "active" does not. Congress's decision to use language barring any "member of the Armed Forces, active or reserve," rather than the more common language requiring that the appointee be "from civilian life," does suggest an intention to exclude more persons than the latter, ordinary requirement does, but our reading of "reserve" gives effect to that intention: Persons on active duty are excluded, per the usual background rule, and, beyond that, persons who are reserve members also are excluded. In addition, if we were to read "active" as equivalent to "regular," then, as suggested above, the phrase "active or reserve" in section 8, which is added to the phrase "member of the Armed Forces," would serve no clear purpose, contrary to normal rules of construction.

For these reasons, we conclude that section 8 of the IG Act does not preclude appointment of a retired Regular Army officer not on active duty as IG for the Department of Defense.

C. KEVIN MARSHALL
*Deputy Assistant Attorney General*
*Office of Legal Counsel*